CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

SLOAN HEFFRON (CABN 285347)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-7234
Sloan.heffron@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MILLER STEVE JERNIGAN,<br><br>Defendant. | CASE NO. 26-CR-00129-JSC<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Date: September 30, 2026<br>Time: 2:30 p.m.<br>The Honorable Jacqueline Scott Corley |

## I. INTRODUCTION

On July 1, 2026, defendant Miller Steve Jernigan pleaded guilty to the sole count of the Information: a violation of 18 U.S.C § 922(g)(1) (Felon in Possession of Firearms and Ammunition). Jernigan entered his guilty plea pursuant to a Rule 11(c)(1)(C) Plea Agreement in which the parties agreed to recommend a custodial sentence of 26 months and a three-year term of supervised release.

For the reasons set forth below, the United States submits that the sentence recommended by the parties is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a).

## II. FACTS

Offense Conduct

The Presentence Investigation Report accurately recounts the offense conduct. Dkt. 29 ("PSR")

at ¶¶ 7-16. On February 1, 2026, a license plate reader alerted a San Francisco Police Department ("SFPD") officer to a blue Nissan sport utility vehicle that was reportedly involved in an automobile burglary the day before. *Id.* ¶ 7. The officer used a police drone to follow the blue Nissan across various San Francisco city streets. *Id.* ¶ 8. A camera on the drone captured video and photographic images of the blue Nissan and its driver, and these images were shared with various on-duty SFPD officers. *Id.* One of the officers who reviewed the images recognized the driver as Miller Jernigan, who the officer knew to be on Post-Release Community Supervision ("PRCS") and subject to an outstanding arrest warrant. *Id.* ¶ 9.

Police continued monitoring the blue Nissan as it drove to the Haight Ashbury neighborhood. *Id.* ¶ 10. There, Jernigan exited the vehicle and went into a nearby apartment building, carrying a multicolored duffle bag. *Id.* Meanwhile, police officers in the area formulated a plan to arrest Jernigan on the outstanding warrant once he returned outside. *Id.*

Shortly after, police observed Jernigan exit the apartment building and walk in the direction of the blue Nissan, still carrying the multicolored duffle bag. *Id.* ¶ 11. A plainclothes officer contacted Jernigan near the corner of Stanyan and Waller Streets. *Id.* ¶ 12. There, after a brief ruse, the officer grabbed Jernigan, identified himself as a police officer, and ordered Jernigan to get on the ground. *Id.* Jernigan physically resisted. *Id.* Additional officers arrived on scene and assisted in taking Jernigan into custody. *Id.* An officer located a 9mm Taurus semi-automatic pistol in Jernigan's jacket pocket. *Id.* ¶ 13. The pistol was loaded with a magazine containing seven live rounds of 9mm ammunition, as well as an additional live 9mm round in the chamber. *Id.* ¶ 15.

Inside the multicolored duffle bag, an officer found a .357 caliber Glock semi-automatic pistol and a large plastic bag containing 38 unfired rounds of .40 caliber ammunition. *Id.* ¶ 14. The Glock was loaded with six live rounds of .357 ammunition, one of which was in the chamber. *Id.* ¶ 15. A records check revealed that the Glock was reported stolen in Stockton in September 2025. *Id.*

<u>Procedural History</u>

Jernigan was initially charged by local prosecutors and was held in local custody following his arrest on February 1, 2026. *Id.* ¶ 5. On March 10, 2026, the United States filed a complaint charging

Jernigan with a violation of 18 U.S.C. § 922(g)(1). Dkt. 1 (Complaint). He was thereafter transferred to federal custody and made his initial appearance on March 18, 2026. PSR ¶ 5. Jernigan has remained in continuous federal custody since his initial appearance. He agreed to waive Indictment, and on March 25, 2026, the United States filed the Information in this case. Dkt. 9 (Information). On July 1, 2026, Jernigan pleaded guilty. Dkt. 20 (Minute Order).

## III. SENTENCING GUIDELINES CALCULATIONS

The government agrees with U.S. Probation's calculation of the applicable Sentencing Guidelines. PSR ¶¶ 21-30. Specifically, the government agrees that Jernigan's Base Offense Level is 14, and that his Total Offense Level is 13. *Id.* ¶¶ 21, 30. This Total Offense Level accounts for a two-level increase pursuant to U.S.S.G. §2K2.1(b)(4)(A) because the .357 Glock pistol Jernigan possessed was stolen, and a three-level reduction under U.S.S.G. §3E1.1(a)-(b) for acceptance of responsibility. *Id.* ¶¶ 22, 28-30. The government agrees that Jernigan's 11 criminal history points place him within Criminal History Category V. *Id.* ¶ 43.

An Offense Level of 13 in Criminal History Category V yields an advisory sentencing range of 30 to 37 months. *Id.* ¶ 91. U.S. Probation recommends that the Court sentence Jernigan to a custodial term of 33 months, followed by three years' supervised release. *Id.* at p. 35.

## IV. SECTION 3553(a) FACTORS

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends that the Court accept the Rule 11(c)(1)(C) Plea Agreement and sentence Jernigan to 26 months' imprisonment and three years' supervised release.

While sentencing courts must consider each of the factors set forth in section 3553(a), the following warrant further discussion in this case: the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1); the nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1); and the need for the sentence imposed to afford adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2)(B).

### A. The History and Characteristics of the Defendant

Jernigan's history shows him to be a recidivist firearms offender who performs poorly while out of custody, including while under court-ordered supervision. This case marks the fourth separate

prosecution since 2016 in which Jernigan has been convicted of a felony offense. In 2016, he was convicted of robbery and initially sentenced to one year in jail. PSR ¶ 37. However, Jernigan's probation was later revoked, and he was sentenced to three years' state prison. *Id*.

Jernigan did not reform during his time in state prison. In 2021, he was convicted of violating 18 U.S.C. § 922(g)(1) and was sentenced to 24 months in BOP. *Id.* ¶ 39. Following his release from custody, Jernigan quickly reoffended: he repeatedly tested positive for using various controlled substances and failed to participate in both outpatient and residential drug treatment programs. *Id*. He then violated supervised release by engaging in a high-speed pursuit with police. *Id.* In June 2023, he was given another chance at residential treatment and entered the Center Point program. Unfortunately, Jernigan squandered the opportunity and was discharged from the program after one week. *Id.* He later admitted to numerous supervised release violations and, in January 2024, was sentenced to eight months' custody with no term of supervision to follow. *Id*.; *see also* N.D. Cal. case no. 20-CR-00429-RS, dkt. 90 (Minute Order). Four months later, in May 2024, Jernigan was again arrested in possession of firearms, resulting in a new state prosecution. PSR ¶ 40. In October 2024, he was sentenced to two years' state prison. *Id.* This history evinces either an unwillingness or an inability to conform his behavior to the law.

On the other hand, the government recognizes that Jernigan has spent much of the last decade under the influence of drugs, and the PSR describes his intractable opiate addiction, which dates back to 2017. *Id*. ¶ 74. While this history in no way excuses Jernigan's criminal conduct, it provides context for some of the extremely poor decisions he has made in recent years, and the government has taken it into account in jointly recommending a sentence four months below the low-end of the advisory Guidelines Range.

Now 31 years old, Jernigan is at a crossroads of sorts. He has a four-year-old daughter and expresses a desire to play an active role in her life. *Id.* ¶ 19. His ability to do so undoubtedly depends, at least in part, on whether he can remain out of custody and lead a sober, law-abiding life.

**B. The Nature and Circumstances of the Offense; the Need for Deterrence**

The nature and circumstances of the present offense justify a 26-month sentence. All felon-in-

possession cases are serious. This case is no exception, as Jernigan has prior convictions for robbery and firearms offenses, and he was subject to PRCS at the time he possessed the guns and ammunition in this case. As noted, Jernigan was eventually sentenced to 36 months in state prison in connection with his 2016 robbery conviction. In both his 2021 and 2024 felon-in-possession cases, he was sentenced to custodial terms of 24 months. A 26-month sentence would represent the longest sentence imposed in any of his firearms cases and the second longest sentence in any of his cases to date. This proposed sentence signals to Jernigan that the commission of additional firearms crimes will result in escalating penalties.

To his credit, Jernigan has accepted responsibility in short order. He has remained in continuous federal custody since his initial appearance in March and has not contested his detention. He waived Indictment, proceeded by Information, and pleaded guilty at his second District Court appearance on July 1, exactly five months from the offense date. The speed at which this case moved has freed up resources and enabled the government to investigate and prosecute additional federal crimes. Apart from the mitigation discussed above, this early acceptance is an additional reason why the government has agreed to recommend a modest downward variance in this particular case.

## V. CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court accept the proposed Plea Agreement and sentence Miller Jernigan to 26 months' imprisonment followed by three years of supervised release, with each of the terms and conditions recommended by U.S. Probation in the PSR. The United States further requests that the Court order that both firearms and all ammunition recovered in this case be forfeited.

DATED: September 23, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
SLOAN HEFFRON
Assistant United States Attorney